Stimis *v.* Stimis.

---

CHRISTOPHER STIMIS, administrator *cum testamento annexo,*

*v.*

JOHN B. STIMIS et al.

60   313
60   319
60   320

[Filed August 25th, 1900.]

1. A mortgage will be decreed to be foreclosed against the devisee of the mortgagor, although there has been in fact no payment of either principal or interest for over twenty years, when it was shown that the mortgagor and owner of the equity of redemption was also the sole surviving executor of the will of the deceased mortgagee and the only person who, during the period of defaults in making the payments which came due on the mortgage, could have taken any steps to collect either the bond or mortgage.

2. When a mortgagor and owner of the equity of redemption, who is also the sole surviving executor of the mortgagee, falsely, and without the knowledge or assent of the legatees who are entitled to the benefit of the mortgage, for his own profit certified the mortgage to have been paid, his certificate will be taken to have been an acknowledgment that up to and at the time it was made, the mortgage had been an existing lien on the mortgaged premises, and the cancellation of the mortgage record will be held to have been fraudulently made, and nugatory, when set up as a defence against the mortgage by his devisees of the equity of redemption.

On bill to foreclose. Answer and proofs.

The complainant is the administrator *cum testamento annexo* of John Stimis, deceased, and the defendants are the children and devisees of his son Henry Stimis, also deceased, who, in 1851, made to the father the mortgage herein sought to be foreclosed.

The mortgage covered lands in Essex county, and was, in the year of its date, duly recorded in that county.

John Stimis, the mortgagee, died in 1851, testate. By his will he gave his estate to his widow for life, and after her death, to his three sons and four daughters, and the two sons of a deceased son. His widow, Ann, and his son Henry were appointed executors of his will, which was duly probated and the executors qualified. In February, 1852, an inventory of John Stimis' estate was filed by the executors, in which appeared the item, "Henry Stimis, bond and mortgage, $500." In 1872 the widow died. In 1887, Henry Stimis, as executor, executed and recorded a certificate of the satisfaction of the mortgage. In 1891 he died. The executors never accounted. The bill charges that in fact no part of the principal was ever paid, and no interest since the death of Ann Stimis. That in 1891, Henry conveyed two portions of the mortgaged property to Susan E. Burling, one of the defendants. The complainant was appointed administrator *de bonis non* of John Stimis, in May, 1892. Ever since the execution of the mortgage, the mortgagor and his devisees have retained possession of the mortgaged premises. The prayer is that the satisfaction of the mortgage be decreed void, and the equity of redemption in the mortgaged premises foreclosed.

A demurrer was filed to this bill because it showed that more than twenty years had elapsed since the making of the mortgage, within which time no part either of principal or interest had been paid.

This demurrer was overruled by Chancellor McGill (*9 Dick. Ch. Rep. 17*), upon the ground that the presumption of payment which in such cases is raised, was rebutted by the explanatory circumstances that the executor (who was the mortgagor) had failed to account; that he was a member of and closely connected

Stimis *v.* Stimis.

with the family to whom the mortgage was payable, and that he had, as executor, entered a satisfaction of the mortgage and thereby recognized its continued existence, within seven years before bill was filed, and that this certificate of satisfaction was false and fraudulent.

Since the demurrer was overruled, the defendants have filed their joint and several answer, denying any knowledge of the debt, the bond and mortgage and the acknowledgment and recording. It denies any personal knowledge on the part of the defendants of the inventory filed by the executors of John Stimis. It denies that the estate of John Stimis remained wholly unsettled upon the death of Henry, and that the defendants have any personal knowledge of the satisfaction of the mortgage.

The answer alleges that neither principal nor interest was ever paid by Henry Stimis, on the mortgage to John Stimis, or his widow, Ann, and that neither John nor Henry ever recognized the existence of any such mortgage; that neither John nor Ann ever demanded a payment of any part of the principal or interest.

It further alleges that the common law period of limitation has run against the enforcement of the mortgage, if the mortgage ever had any existence, and that the mortgage cannot now be foreclosed. It is further set up in the answer that if the mortgage ever had a legal existence, a foreclosure cannot be had without an accounting of the estate of John Stimis, an ascertainment thereby of what was due from Henry Stimis, as executor of the will of John, to the devisees named therein; that if there was such an accounting, it would be found that Henry Stimis had paid to the devisees under the will of John, all that was due to them from the estate, and the law would presume such payments, even if the same could not be proved. The answer also alleges that the complainant, administrator, had made application to the orphans court of Essex county for a settlement of the estate of John Stimis, in which application the executor of Henry Stimis was required to show cause why he should not account for the estate of John Stimis which had come into his possession as executor of Henry, which matter was still pending before the orphans court undetermined, and that

no foreclosure can be had until the orphans court has first ascertained whether Henry was indebted to the devisees under the will of John Stimis.

*Mr. Herbert Boggs,* for the complainant.

*Messrs. Coult & Howell,* for the defendants.

GREY, V. C.

The overruling of the demurrer is in effect a determination that if the allegations of the bill are sustained by proof, the complainants are entitled to the relief for which they pray. As the answer denies these allegations, the burden rests upon the complainant to establish them.

That the mortgage constituted part of the estate of John Stimis, deceased; that Henry Stimis, the mortgagor, was his son; that the life tenant of the mortgage was Henry's mother, and the remainder people were his brothers and sisters; that Henry was one of the executors of his father's will; that the executors inventoried the mortgage as part of their testator's estate; that they never filed any account, and that in 1887, Henry Stimis, being himself the mortgagor, acknowledged and entered satisfaction of the mortgage, as executor, is, I think, fully established by the proofs. The chancellor held on the argument of the demurrer that taking these incidents to be true, they rebutted the presumption of the satisfaction of the mortgage arising from the non-payment of any part, either of principal or interest for over twenty years.

The proofs submitted on the hearing go much further than the allegations in the bill to establish the existence of the matters set up in the bill as explanatory of the non-payment of either interest or principal.

That the mortgage was part of the assets of the estate of John Stimis, and passed under his will, is proven without denial. So it is undisputed that Henry Stimis accepted the execution of the will and proved it, and filed the inventory of the estate in which this mortgage was listed. He certainly never would have done this if the mortgage had not been a living asset.

In this situation of affairs, Henry became as to this mortgage a trustee bound to carry into effect the testator's disposition of it. A proper observance of his duty would have led him to have paid the debts, stated his account, and to have transferred the mortgage to his mother, Ann Stimis, to whom the testator bequeathed the residue of his estate (of which this mortgage formed a part) for life or *durante viduitate,* and to his brothers and sisters in remainder.

This was never done, and the obligation on Henry's part to complete this trust remained undischarged up to the time of his death in 1891.

The influences which led Henry Stimis to this breach of his duty and to the non-payment of anything on the mortgage for over twenty years are fully exhibited in the proofs. It is shown that he was during a considerable portion of this twenty years of non-payment quite straitened in his financial capacity, and that though he had some real estate, he was unwilling to realize upon it and pay his debts, preferring to hold for higher prices, in which he appears to have been disappointed.

Sales were made of some lands which came to Henry and his brothers and sisters, of the proceeds of which Henry had his share. This was a year or two after Ann Stimis' death, in 1872 —probably about the year 1874. He excused himself then from settling this mortgage, in terms which recognized its continued obligatory effect, and appealed for delay to the consideration of the family. During the period from this time up to 1887, the date when he executed and recorded the satisfaction on record of the mortgage, he "pleaded poverty," and the reason why payment was not enforced was thus described by one of his brothers: "Because it would have put Henry in such a plight that he would never have gotten over it." At this period—1887 —Henry's financial situation was such that his taxes had been unpaid for a number of years, and had accumulated to the amount of $600. He was so pressed that he was obliged to borrow this money by mortgaging the premises now sought to be foreclosed, and in order to do that, was compelled to remove the preceding encumbrance of the mortgage now in suit. He could not pay it as mortgagor, but as executor he still had con-

trol over the record of the mortgage, by which he could apparently satisfy it, and thus borrow the money he needed. He was sole surviving executor. He had never filed any account, nor obtained release from those entitled at his hands as executor to a settlement of the estate. He does not appear to have asked any of the remainder people to aid him by consenting to the cancellation of the mortgage. At this time (1887) the actual possession of the mortgage was probably held by Henry's sister Eliza. If Henry had attempted to get possession of it so that the seals might be taken off and the mortgage in this condition be exhibited to the register to be canceled of record, it would probably have excited suspicion. The mortgage record still stood with John Stimis as mortgagee and holder of the mortgage.

The only person who could thus cancel it was Henry Stimis, acting as sole surviving executor, &c., of John Stimis. It was easy, without actually producing the mortgage, to make and record a certificate of payment and in this way to discharge the lien of the mortgage. Henry did execute and acknowledge a separate certificate that the mortgage was "paid and discharged." This certificate of discharge was recorded in July, 1887, the new mortgage was given to Mrs. Howell, and the mortgage money that was raised upon it was used to pay the $600 arrears of taxes which Henry owed. These several incidents were really but a single transaction, although they happened several weeks apart. All of them were brought about to enable Henry to get the money to pay his arrears of taxes.

This action of Henry Stimis, as executor, in falsely certifying that the mortgage had been paid, and in recording the certificate, without the assent of his brothers and sisters, the beneficiaries of the mortgage, was, as between them fraudulent and a clear breach of his duty as executor, and was wholly nugatory to discharge the mortgage. But it also defeated its own object, for Henry's action was a distinct recognition of the continuance of his own *stalus* as executor with power to satisfy the mortgage, and of the fact that the mortgage record was still notice of an existing lien.

The evidence also shows that even after this discharge of the record of the mortgage, Henry acknowledged to his brothers and sisters the continued obligation of the mortgage, and his

purpose to settle it, and kept them in ignorance that by his certificate he had discharged the record.

Their entire good faith is shown by the undisputed proof that in 1891, they caused notice to be given to Henry's grantee of part of the mortgaged premises of proceedings to be taken to collect the mortgage. Henry was alive at this time, though sick and confined to his house. The grantee was his daughter, Mrs. Burling. Her husband brought this letter over to Henry and he then knew that the remaindermen had started to enforce payment of the mortgage. Christopher Stimis, the complainant, one of his brothers entitled to share in the mortgage, called on Henry after Mr. Burling had brought this letter to him. There is no attempt to show that Henry, then or at any other time, ever to Christopher, or to any of the remaindermen, either disclosed that he had certified the discharge of the mortgage and recorded it, or claimed that he had in fact paid it.

The counsel for the defendants insist that the mere expiration of twenty years, during which there had been no payment on the bond or mortgage, no matter for what cause, raises a conclusive presumption that the bond and mortgage have been satisfied, and that *Blue* v. *Everitt, 11 Dick. Ch. Rep. 455,* in the court of appeals, is final authority that a bill cannot be maintained in this court to foreclose such a mortgage.

It is unnecessary to examine in the present case the judgment rendered in *Blue* v. *Everitt,* as to the operation upon a bond and mortgage of the presumption of satisfaction arising from non-payment of the bond for sixteen, or the mortgage for twenty years.

The very case of *Stimis* v. *Stimis,* now under consideration, was mentioned by the learned justice, who delivered the opinion in *Blue* v. *Everitt, 11 Dick. Ch. Rep. 460,* as one of those in which, because the mortgagor was also the executor of the mortgagee, an independent equity was raised in favor of the life of the mortgage against the consequence of the non-action of the executor mortgagor to enforce its payment, notwithstanding the mortgage might otherwise have been presumed satisfied by the application of the statute of limitations. It must be remembered that Henry became one of the executors of his

father's will, and as such joined in an inventory in which this mortgage was listed as part of the estate; that he continued to hold his trust as executor during the whole period of the defaults in payment, of which advantage is now sought to be taken by Henry's devisees. Henry Stimis was the only person who, during that period, could have brought suit to enforce the mortgage and thus have prevented the running of the statute. It was his *status* as executor which enabled him to discharge the mortgage record in 1887. It was to his own interest as mortgagor and owner of the equity of redemption, to defeat the mortgage which he held as executor. He committed a breach of trust for his private profit.

The defendants insist that this ruling in *Blue* v. *Everitt,* recognizing the special equity of the present Stimis suit, was based on a mistake of fact in that it assumes that the mortgage came into the possession of Henry Stimis, the mortgagor, as executor of the mortgagee. The reference in *Blue* v. *Everitt* to this case of *Stimis* v. *Stimis* was, of course, based on the narration of facts in the chancellor's opinion overruling the demurrer.

It is true the mortgage itself, after it had been inventoried by Henry, as executor, came for a time into the mere custody of Henry's sister, but there is no proof that her holding of it was by virtue of any authority over it whatever. The court of appeals in *Blue* v. *Everitt,* in mentioning Henry's possession of the mortgage, did not refer to the physical holding of the paper, but to his control as executor of the right to enforce payment of the mortgage. Those in remainder entitled to the mortgage, had, because of Henry's *status* as executor, an equity to have this duty of the executor performed as a trust. When therefore those who stand in Henry's place attempt to set up the statute of limitations as conclusive because of the presumption of satisfaction of the mortgage, it is well replied: "The delay in enforcing payment was a breach of trust duty on the part of him under whom you claim, and it does not lie with you to set up against us, to whom the duty was owing, any rights created by that breach."

Some criticism was made by defendants' counsel because of

the non-production by the complainant of the bond which was secured to be paid by the mortgage in question. The evidence shows that Henry had joined in an inventory of both the bond and the mortgage, thereby acknowledging that they had the bond in possession. It was his duty to have cared for it. He was the only person who could sue on it after his mother's death in 1872. It was for him and those who stand in his place, and not for those to whom he owed a duty, to account for the bond. The proof showed that it came to the hands of Henry's sister some time after the inventory was made, but without any authority in her either to hold it or to sue on it. Afterwards, in some unexplained way it was lost. The bond was not the debt, but merely the evidence of it. The loss or non-production of the bond did not pay the debt. There is not a single element of proof in the whole case to show that Henry ever in any way paid it. The non-production of the bond cannot defeat the complainant's right to foreclose the mortgage.

There is a suggestion in the answer that inasmuch as Henry Stimis' account as executor of John Stimis' will is yet unsettled, the foreclosure of the mortgage should be delayed until that account has been stated and allowed. This accounting was due in 1853. *Stimis* v. *Stimis, ubi supra 21.* Henry's delay of more than forty years to account as executor, is now set up to postpone the payment of his own mortgage, one of the assets of the estate. If such a defence could at any time be entertained, his long and inexcusable delay has destroyed it. Moreover there is nothing in the evidence which in any way indicates that the estate of John Stimis was to any extent indebted to Henry Stimis, or that the latter had as executor expended any of his own moneys for that estate.

The complainant's counsel concedes in his brief that he has failed to sustain his allegation that Mrs. Burling took the portion of the mortgaged lands which Henry Stimis conveyed to her after the discharge of the record, with notice that the certificate of discharge was false and fraudulent, and that no decree should be made against the Paterson and Newark Railroad Company as to the part of the mortgaged premises conveyed to that company, as it is not a party to the bill. The complainant only asks

21

for a decree against the portion of the mortgaged premises the title to which still remains in the devisees of Henry Stimis.

I will advise such a decree, and that the amount due on the mortgage is the principal sum $500, with interest thereon from February 13th, 1872, the date of the death of the life tenant, Ann Stimis.